[Cite as *Lisy v. Mayfair Estates Homeowners Assn., Inc.*, 2012-Ohio-68.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TODD A. LISY, et al.

     Appellees

     v.

MAYFAIR ESTATES HOMEOWNERS
ASSOCIATION, INC.

     Appellant

C.A. No.     25392

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 05 3454

DECISION AND JOURNAL ENTRY

Dated: January 11, 2012

CARR, Presiding Judge.

**{¶1}** Appellant, Mayfair Estates Homeowners Association, Inc., appeals the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Todd and Staci Lisy. This Court affirms, in part, and vacates, in part.

I.

**{¶2}** This matter arises out of a dispute between the owners of residential property and their homeowners' association.

**{¶3}** Todd and Staci Lisy, as individuals, and as Trustees of the Lisy Family Revocable Trust, are owners of the real property located at 3581 Parfoure Blvd. in Uniontown, Ohio. The Lisys are members of the Mayfair Estates Homeowners Association, Inc. (hereinafter referred to as "Mayfair Estates"). The parties are subject to the terms and provisions of the Declaration of Easements, Covenants, and Restrictions for Mayfair Estates (hereinafter referred to as "the Declaration"). The Managing General Partner of Mayfair Estates executed and brought into

being the Declaration on September 20, 1988. The Declaration contained an exhibit that set forth the Articles of Incorporation (hereinafter referred to as "the Articles") and Bylaws of Mayfair Estates. In March 1995, Mayfair Estates published Volume 1.9 of the Mayfair Lakes Estates Homeowners Newsletter, in which it printed outbuilding restrictions that had been adopted by the Board of Trustees. On April 8, 1997, the Board adopted two amendments to the Bylaws.

{¶4} On March 7, 2009, the Lisys delivered to the residence of the President of the Board of Trustees their plans to build a structure to house their motor home. The motor home is 28 feet long and just over 11 feet tall and, therefore, cannot be housed in their garage. On March 12, 2009, the president sent an email to the Lisys, informing them that the Board had not made a decision on their proposal and had tabled further discussion of the matter until a meeting that the president wanted to have at a later date. On April 3, 2009, the Board met again to consider the plans. On April 8, the Board sent a letter to the Lisys informing them that it had rejected their proposed building as not in conformance with provisions of the Declaration.

{¶5} On May 1, 2009, the Lisys filed a complaint for declaratory judgment. The complaint contained eight counts and asked the court to make eight separate declarations. On August 11, 2009, Mayfair Estates filed an answer to the complaint. On February 15, 2010, the Lisys filed a motion for summary judgment. On March 15, 2010, Mayfair Estates filed a response to the motion. On March 18, 2010, the Lisys filed their reply. On April 28, 2010, the trial court issued a judgment entry in which it granted the motion for summary judgment and declared the rights and obligations of the parties with respect to the first seven counts in the complaint. The trial court found that it did not have to rule on the eighth requested declaration as it was rendered moot.

**{¶6}** Mayfair Estates filed a notice of appeal on May 13, 2010.[1] On appeal, Mayfair Estates raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT TO THE LISYS AND ENTERING DECLARATORY JUDGMENT IN THEIR FAVOR ON ALL COUNTS IN THEIR COMPLAINT."

**{¶7}** In their sole assignment of error, Mayfair Estates argues the trial court erred in granting summary judgment in favor of the Lisys.

**{¶8}** Mayfair Estates makes three arguments in support of its assignment of error. Mayfair Estates argues there are genuine issues of material fact as to whether the board rendered a decision within the seven-day period required by the Declaration and whether the Lisys waived the Declaration's requirement that the board decide their application within seven days. Mayfair Estates also argues that the construction of recreational vehicle garages such as the one the Lisys wished to build on their property is clearly prohibited under the Declaration as well as Mayfair Estates' general scheme. Finally, Mayfair Estates contends that the trial court erred in granting relief for claims not addressed in the motion for summary judgment. In regard to the trial court addressing all of the counts in the complaint, Mayfair Estates notes that it was denied an opportunity to adequately address four of the eight counts in the complaint because they were not mentioned in the motion for summary judgment. In response, the Lisys argue that there can be no genuine issues of material fact because Mayfair Estates did not present any evidence in support of its position. With respect to the court granting summary judgment on counts not

---

[1] The resolution of this appeal was delayed due to an attempt by the parties to resolve this matter via mediation.

discussed in the motion for summary judgment, the Lisys argue that the additional counts in the complaint "were alternative theories that required judgment only in the event that the court failed to grant summary judgment on the interpretation of the [D]eclaration, and the Board's approval of the Lisys' plans as a matter of law." The Lisys assert that while some of the trial court's order is "perhaps dicta," it is not clearly prejudicial or erroneous.

{¶9} We must begin our discussion by outlining how the trial court resolved the arguments made by the parties below.

{¶10} The Lisys' complaint for declaratory judgment contained eight separate counts. Specifically, the Lisys requested that the trial court declare: (1) that the Board, in not approving or rejecting their plans within seven days, approved the plans according to Declaration Section 6.11; (2) that the structure proposed by the plans is an "outbuilding" as used in Section 5.11 of the Declaration; (3) that the Declaration does not require that an outbuilding be attached to a dwelling; (4) that outbuildings are permitted by the Declaration; (5) that the Board can permit reasonable variances from the outbuildings/storage shed restrictions; (6) that restrictions on outbuildings are unreasonably restrictive and, therefore, void as a matter of law; (7) that the outbuilding restrictions were an improper amendment to the Bylaws of the Association; (8) that the Board's refusal of the Lisys request for a variance is unreasonable.

{¶11} In their subsequent motion for summary judgment, the Lisys addressed the majority of their proposed declarations. In regard to count one, the Lisys argued that because the Board did not reject their plans within the seven-day window provided in the Declaration, the plans were approved by the Board as a matter of law in accordance with Section 6.11 of the Declaration. The Lisys specifically stated that they were entitled to a declaration that the Board approved their plans. With respect to count three of the complaint where the Lisys requested a

declaration that the Declaration does not require that an outbuilding be attached to a dwelling, the Lisys argued that the term outbuilding, by its plain meaning, refers to a structure that is separate from but accessory to a main house. The Lisys specifically requested a ruling that the Declaration does not require an outbuilding to be attached to a dwelling. In regard to the issue raised in count four of the complaint as to whether outbuildings are permitted by the Declaration, the Lisys argued that Declaration refers to the terms "garage" and "outbuilding" in the disjunctive. The Lisys further noted that the Declaration was devoid of language that an outbuilding be attached to a dwelling, as is specifically required of a garage. The Lisys stated that they were entitled to a declaration that a lot owner may construct an outbuilding or other structure under Section 5.10 of the Declaration. While the Lisys did not expressly ask for a declaration by the trial court regarding count six of their complaint, they did address the unreasonableness of the restrictions on outbuildings in their motion for summary judgment. Finally, in regard to count seven of the complaint, the Lisys argued that the Board was without authority to create additional restrictions on outbuildings by amending the Bylaws as they did in 1995. The Lisys contended that because the Board did not have authority to amend the Bylaws, the additional outbuilding restrictions were void.

{¶12} The trial court issued its judgment entry on April 28, 2010. In granting summary judgment in favor of the Lisys, the trial court expressed its concern with the lack of clarity and specificity in the Declaration. In its analysis, the trial court recognized that while Section 5.6 requires garages to be of a minimum size to house two full-size automobiles and to be attached to a dwelling, Section 5.11 states that no recreational vehicle, such as a motor home, may be stored on a lot unless such vehicle is kept in a garage or suitable outbuilding. The trial court went as far as to state that "a review of the Declaration leaves one flummoxed and scratching

one's head." With respect to the scope of the judgment entry, the trial court recognized that the Lisys, in their memorandum in support of the motion for summary judgment, had "restated their request for most declarations, but [did] not specifically address[] others." The trial court stated that because the matter was a declaratory judgment action, it was necessary to address each of the Lisys' proposed declarations within the context of the summary judgment disposition. While the Lisys did not specifically address each requested declaration set forth in the complaint, the trial court concluded that "within the analysis above is contained sufficient resolution of all of plaintiff's requests." In granting the motion for summary judgment, the trial court declared the rights and obligations of the parties with respect to the first seven counts in the complaint. In regard to the eighth requested declaration, the trial court stated, "[i]nsomuch as the court has determined that the plans were approved by default, and failing that, that the plans must be approved because the Declaration's terms and restrictions are subject to multiple interpretations, this proposed declaration is rendered moot and need not be entered."

{¶13} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> "(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex. rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589 (1994).

{¶14} While the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial, once the moving party satisfies its burden, the non-moving party

may not rest upon there mere allegations or denials of the party's pleadings. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Rather, the burden then shifts to the non-moving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts which show that there is a genuine issue of material fact for trial. *Id.* Civ.R. 56(C) designates the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," as proper in demonstrating that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Throughout, the evidence must be construed in favor of the non-moving party. *Viock*, 13 Ohio App.3d at 12. A disputed fact is material if it impacts the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999).

{¶15} In regard to the first requested declaration, a review of the record reveals that the trial court properly concluded that the Board approved the Lisys' plans pursuant to Section 6.11 of the Declaration by not expressly approving or denying the plan within the seven-day period. On appeal, Mayfair Estates argues that there is a question of fact as to whether the Lisys waived the requirement that the Board rule on the plan within seven days. In responding to the motion for summary judgment, however, Mayfair Estates did not argue the Lisys waived the requirement. Rather, Mayfair Estates argued that the Board "made a decision" pursuant to Declaration 6.11 by sending the Lisys an email on March 12, 2009, informing them that they needed to gather more information prior to making an educated decision and inviting them to make a presentation before the Board. Mayfair Estates further argued that Sections 6.10, 6.11, and 6.12 do not require affirmation or denial of the plans. As Mayfair Estates did not argue that the Lisys waived the seven-day requirement in responding to the motion for summary judgment,

they have forfeited that argument on appeal. *Roberts v. Reyes*, 9th Dist. No. 10CA009821, 2011-Ohio-2608, at ¶9. Moreover, a review of the Declaration reveals that there was no provision permitting the Board to extend the seven-day time period by providing email notification. Section 6.11 of the Declaration states that the "Board must render its decision in respect to any plans or specifications submitted to it and give notice thereof to an Owner within seven (7) days after the Owner delivers the Owner's plans and specifications to the Committee or Board[.] *** Failure to give notice of its decision within said 7 days shall be deemed to be an approval of the plans and specifications submitted."

**{¶16}** The trial court correctly recognized that:

"It is not subject to interpretation. It simply cannot be understood to mean anything other than what is written. It does not call for acknowledgment of receipt of the plan; it does not call for the tabling of discussion of plans that have been submitted; it does not call for a tolling of time because an email notification is dispatched within the seven-day window. Yes, the intent of the provision is that the Association be spurred into action on members' proposals. However, it is also clearly the intent of that provision to provide a consequence to the Board if it fails to act."

**{¶17}** Given the language of the Section 6.11, the Board was required to expressly approve or deny the plan within seven days or else it was deemed approved. As Mayfair Estates did not approve or deny the Lisys' plan within seven days, the trial court correctly declared that the Board approved the plans pursuant to Section 6.11.

**{¶18}** Mayfair Estates further argues on appeal that the express terms of the Declaration, Bylaws and outbuilding regulations, in addition to Mayfair Estates' general scheme, prohibit the construction of the Lisys' proposed structure. Pursuant to Section 5.2 of the Declaration, no structure may be constructed unless approved by the Board. As noted above, the Board approved the Lisys' plans pursuant to the terms of the Declaration by virtue of not issuing a

decision within the allotted seven-day period. In light of the Board's approval of the Lisys' plan, any issues of interpretation relating to the garage and outbuilding restrictions are rendered moot.

{¶19} Finally, Mayfair Estates argues that the trial court was without authority to grant summary judgment on the counts not addressed in the Lisys' motion. The Lisys did, in fact, move for summary judgment on their first count requesting a declaration that the Board approved their plan. We have concluded that the trial court properly granted summary judgment on the first requested declaration. Given that the trial court's determination in regard to the first requested declaration resolved the dispute between the parties, all of the remaining requested declarations were rendered moot. As the trial court determined that only the eighth requested declaration was moot, the trial court's granting of summary judgment on the second, third, fourth, fifth, sixth, and seventh requested declarations must be vacated.

{¶20} It follows that Mayfair Estates' assignment of error is overruled, in part, and sustained, in part.

III.

{¶21} To the extent that the trial court declared that the Board approved the Lisys' plan, Mayfair Estates' assignment of error is overruled. To the extent that the trial court addressed any remaining requested declarations which were rendered moot, the trial court's judgment is vacated.

Judgment affirmed, in part,
and vacated, in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS

DICKINSON, J.
CONCURS IN PART, SAYING:

INTRODUCTION

{¶22} When the Board of Trustees of the Mayfair Estates Homeowners Association rejected their plans to build a garage on their residential lot, Todd and Staci Lisy sued it. The trial court granted summary judgment in favor of the Lisys, and the Association appealed. I agree with the majority that this Court should affirm because the trial court correctly granted summary judgment to the Lisys on count one, declaring that the Board had approved the plans by default by failing to render a decision within seven days. As that ruling rendered all alternative counts moot, the trial court's incorrect grant of summary judgment on certain unargued counts was harmless error.

BACKGROUND

**{¶23}** The Lisys own a motor home, which, under the rules of their homeowner's association, they are not permitted to store on their residential property unless it is housed in a suitable garage or outbuilding. The motor home is too large to fit inside their attached two-car garage, so they designed a detached garage for it. The Association forbids homeowners to build any structure unless the plans are approved by the Board of Trustees, so the Lisys first sought permission to build the garage. They submitted their plans to the Board on March 7, 2009. On March 12, 2009, Sam Leemaster, acting on behalf of the Board, responded via email. Mr. Leemaster explained, "[t]he board and I do not feel like we have enough information/background to make an educated decision and we have decided to table this matter until our next/first board meeting. We would like to extend an offer for you to join us and make a short presentation of your project. I would like to have this meeting within the next two weeks. We thank you in advance for your patience."

**{¶24}** On April 2, 2009, the Lisys presented their plans for the detached garage to the Board at a meeting. By letter dated April 8, 2009, the Board denied the Lisys' request to build the garage. The Board explained that the proposed building "would be in clear violation of the Declaration of Easements, Covenants and Restrictions for Mayfair Estates" because it would not be attached to the house, it would violate a rule allowing only one structure per lot, and it would violate the Association's height, location, and maximum square footage standards for "suitable outbuilding[s]." On May 1, 2009, the Lisys filed a complaint for declaratory judgment in the Summit County Common Pleas Court.

**{¶25}** The Lisys organized their complaint into eight counts, each seeking a distinct declaration from the court. In count one, the Lisys sought a declaration that, under the terms of

the governing documents, the Board had approved the plans for the garage by failing to provide notice of its decision within seven days of submission of the plans. In count two, they sought a declaration that the proposed structure "is an 'outbuilding,' as used in Section 5.11" of a governing document known as "the Declaration." Count three sought a declaration that "the Declaration does not require that an outbuilding be attached to a dwelling." Count four sought a declaration that "a lot owner may construct an outbuilding or other structure under Section 5.10, provided that the outbuilding or other structure complies with the other restrictive covenants contained in Paragraph 5.2 et seq." Count five sought a declaration that "the Board can permit reasonable variances from the outbuildings/storage sheds restrictions." Count Six sought a declaration that "the outbuilding/[storage shed] restrictions are void as a matter of law" because they are "arbitrary, capricious, and unreasonable[.]" Count seven sought a declaration that the "outbuildings/storage sheds restrictions are . . . void" because they were improperly adopted without a vote of the membership and effectively removed "any meaningful right to build an outbuilding for the purpose[ ] of storing recreational . . . vehicles." Count eight sought a declaration that "the Board's refusal of [the Lisys'] request . . . is unreasonable, and unlawful."

{¶26} The Lisys attached to their complaint copies of the governing documents for the Association, including the Declaration of Easements, Covenants and Restrictions for Mayfair Estates, the Articles of Incorporation, the Bylaws, and the Outbuilding Restrictions published in volume 19 of the Association newsletter. They also attached a copy of an email purporting to be from Mr. Leemaster to Mr. Lisy dated March 12, 2009, and a letter from the Board addressed to the Lisys, dated April 8, 2009.

{¶27} The parties agree that Section 6.11 of the Declaration provides that, "the Board must render its decision in respect to any plans or specifications submitted to it and give notice

thereof to an Owner within seven (7) days after the Owner delivers the Owner's plans and specifications to the . . . Board[.] . . . Failure to give notice of its decision within said 7 days shall be deemed to be an approval of the plans and specifications submitted." The Lisys moved for summary judgment, arguing that the Board had approved the plans under the terms of the Declaration by failing to issue a decision within seven days as required. They also argued the merits of their proposal under the terms and conditions of the documents governing the Homeowners Association. They argued that Section 5.11 of the Declaration, which requires homeowners to store recreational vehicles in either "a garage or suitable outbuilding," coupled with the numerous references to restrictions for outbuildings or other structures on the lot, means that a separate structure to house a motor home is permissible despite language prohibiting "more than one (1) building . . . on a Lot." The Lisys supported their summary judgment motion with references to the exhibits attached to their complaint and an affidavit from Mr. Lisy authenticating those documents.

{¶28} The Association opposed the summary judgment motion by arguing that it had properly issued a decision within seven days because, within that time, it emailed the Lisys to let them know that more information was necessary and invited them to meet with the Board to present the plans. The Lisys did not object to the request and participated in the Board meeting on April 2. The Association has argued that the Declaration language does not require an approval or denial within seven days, and its request for an in-person presentation to the Board was its "decision" as required by the Declaration. It argued that the second presentation of the plans started a new seven-day window within which to issue a decision approving or denying the plans. Additionally, the Board argued that the Lisys were not prejudiced by the delay of one month from the time of the first presentation of the plans to the time the Board issued its denial

letter. The Board further argued that the validity of its outbuilding restrictions had been upheld in a previous decision of the Summit County Common Pleas Court and the Lisys' plans cannot be approved because they run afoul of those restrictions. The Board did not submit additional evidence, but relied, as the Lisys had, on the exhibits to the complaint.

## SUMMARY JUDGMENT

{¶29} The Association's assignment of error is that the trial court committed prejudicial error by granting summary judgment to the Lisys on all counts. There is no factual dispute in this case. The parties agree on all pertinent facts regarding the events leading to the filing of the complaint. There is no dispute that the documents attached to the complaint are true and correct copies of the documents governing the relationship between the Association and the Lisys. The parties agree on everything except the legal interpretation of the language of the governing documents in light of the facts of this situation. Declarations and bylaws of a homeowners association are contracts between the association and the purchasers. *Murtha v. Ravines of McNaughton Condo. Ass'n*, 10th Dist. No. 09AP-709, 2010-Ohio-1325, at ¶13. "The construction of written contracts . . . is a matter of law." *Latina v. Woodpath Dev. Co.*, 57 Ohio St. 3d 212, 214 (1991). As there is no genuine issue of material fact remaining for trial, the sole question is whether the Lisys are entitled to judgment as a matter of law. Civ. R. 56(C).

### The Email Did Not Notify the Lisys of a "Decision" Under Section 6.11 of the Declaration.

{¶30} The parties agree that the Lisys first submitted their plans and specifications for the project to the Board by delivering them to Mr. Leemaster's house on March 7, 2009. They also agree that, within seven days, the Board responded via an email from Mr. Leemaster to Mr. Lisy. The dispute revolves around whether the email was a "decision" as that term is used in Section 6.11 of the Declaration. The Board has argued that it complied with that provision by

giving notice within seven days that it would require more time because "[it did not] have enough information/background to make an educated decision [on the project]." In granting summary judgment to the Lisys, the trial court held that the Declaration "could not [be] clearer . . . [that] the intent of [Section 6.11] is that the Association be spurred into action on members' proposals . . . [and] to provide a consequence to the Board if it fails to act."

{¶31} "When confronted with an issue of contract interpretation, the role of the court is to give effect to the intent of the parties to that agreement." *Martin Marietta Magnesia Specialties L.L.C. v. Pub. Utils. Comm'n*, 129 Ohio St. 3d 485, 2011-Ohio-4189, at ¶22. "The court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Id.* "Contract terms are to be given their plain and ordinary meaning." *Lager v. Miller-Gonzalez*, 120 Ohio St. 3d 47, 2008-Ohio-4838, at ¶15.

{¶32} The word "decision" is commonly understood to refer to a judgment settling a question or controversy. Webster's Third New Int'l Dictionary 585 (1993) ("the act of settling or terminating (as a contest or controversy) by giving judgment."). The heading of Section 6.11 of the Declaration is "Approval of Plans or Specifications by Board[.]" It provides that "the Board shall have the power, authority and duty to . . . determin[e] [whether] all grading, landscaping and construction on Lots conform with the remaining covenants and restrictions set forth in . . . Paragraph 5 . . . ." The provision requires that "the Board must render its decision in respect to any plans or specifications submitted to it and give notice thereof to an Owner within seven (7) days after the Owner delivers the . . . plans and specifications to the . . . Board."

{¶33} I agree with the trial court's interpretation of Section 6.11 of the Declaration. The intent of that section is to require the Board to act quickly on all proposals submitted to it by homeowners. The section includes an incentive for the Board to act quickly by providing that

"[f]ailure to give notice of its decision within said 7 days shall be deemed to be an approval of the plans[.]" The document that the parties agree governs this question uses mandatory language to describe the duty of the Board to render its decision and notify the homeowner. It also uses mandatory language to indicate that a failure of the Board in that regard will result in an approval by default. The intent of the section is to provide homeowners a prompt decision regarding approval of their plans for grading, landscaping, or building on their property. I am not persuaded by the Association's argument that Mr. Leemaster's email requesting more time to make "an educated decision" itself constituted a "decision" as contemplated by Section 6.11 of the Declaration.

There Is No Mechanism For the Board
to Extend the Time to Make a Decision.

{¶34} The Association has argued that the Declaration specifically permits the Board to request additional information from owners before approving or denying proposed plans. Its argument is based on Section 5.2(a) of the Declaration that provides that "[n]o grading or landscaping shall be performed on any Lot, nor shall any building or structure . . . be erected . . . unless and until . . . plans and specifications . . . showing [size, location, etc.] in such detail as Declarant may request . . . and such other information as Declarant shall request has been furnished to and approved in writing by Declarant. Declarant reserves the right to reject all such plans and specifications . . . for any reasonable ground, including, but not limited to aesthetic reasons." That same subsection of the Declaration provides that the "Declarant shall act on all plans submitted within 14 days after submission by Owner." At first blush, it appears that, in regard to an owner's "plans," Section 6.11, requiring the Board to decide within 7 days, and Section 5.2(a), requiring the Declarant to act within 14 days of submission, conflict. The parties have argued about the interaction of the two sections given the use of the word "act" versus

"deci[de]" and the 7-day versus 14-day window. The two sections do not conflict, however, because the "Declarant" in Section 5.2 is not the Board of Trustees of the Association referred to in Section 6.11.

{¶35} The "Declaration of Easements, Covenants and Restrictions for Mayfair Estates" was made August 8, 1988, by Mayfair Estates Company, a development company that was then the "owner of certain real property . . . situated in the Township of Green, . . . known as Mayfair Estates, Phase I[.]" The "Declarant" referred to in Section 5.2(a) is defined in Section 1.7 as the Mayfair Estates Company. Under the terms of the Declaration, Mayfair Estates Company would create a nonprofit corporation known as Mayfair Estates Homeowners Association by the time record title to all the lots on which houses had been constructed had been conveyed to owners for dwelling purposes.

{¶36} Section 5.2(a) appears in Section 5 of the Declaration, entitled "Covenants and Restrictions." Section 5.2 begins by explaining that the following four subsections, labeled (a) through (d), apply "[u]ntil two years after such time as neither Declarant nor any Builders own any Lot in the Subdivision . . . ." The Association's argument is based on the idea that the Board of Trustees of the Association later obtained all of the development company's rights and duties, including those described in Section 5.2. Under Section 6.10, "[w]hen the authority of Declarant [development company] to approve grading, landscaping and construction on the Lots pursuant to Paragraphs 5.2 and 5.10 hereof ends, such right and authority contained in said Paragraphs . . . shall pass to the Board[.] . . . [S]o long as this Declaration is in effect, the Board . . . shall have the power, rights and authorities granted to Declarant in said Paragraphs 5.2 and 5.10 and as hereafter provided."

**{¶37}** Section 6.11 of the Declaration also refers to Section 5.2. It reiterates that, "[a]s provided in Paragraph 6.10, the Board shall have the power, authority and duty to carry out the obligations of Declarant as set forth in Paragraphs 5.2 and 5.10 after the Declarant's authority has terminated." It goes on, however, to explain that, "[a]fter Declarant's approval rights expire[,] . . . the Board must render its decision in respect to any plans or specifications submitted to it and give notice thereof to an Owner within seven (7) days after the Owner delivers the Owner's plans and specifications to the . . . Board[.] . . . Failure to give notice of its decision within said 7 days shall be deemed to be an approval of the plans and specifications submitted."

**{¶38}** The intent of the parties is clear when Section 5.2 is read in conjunction with Section 6.11. Under the terms of the Declaration, the development company was given 14 days to "act" on plans submitted by lot owners, but once the houses were built and sold and the rights and duties of the development company shifted to the Association, the Board would only have seven days to "render its decision." Furthermore, in the event that the Board failed to render a decision in seven days, such failure would be deemed an approval by default. The Declaration contained no similar consequence for the development company failing to timely act on plans under Section 5.2(a). Although the Board was to make the same evaluations of the plans to determine whether they violated any covenants or restrictions for Mayfair Estates, it would not be subject to the same procedure the development company had enjoyed. The Declaration specified that, once the rights and duties shifted from the development company to the Board of Trustees of the Association, owners' plans would have to be processed faster or there would be a consequence. Therefore, contrary to the Association's argument, Section 5.2(a) does not provide

the Board a mechanism for extending the time within which it may render a decision by requesting additional information from owners.

### The Association Has Failed to Preserve its Waiver Argument for Appeal.

**{¶39}** The Association has also argued that the Lisys should be estopped from arguing that the Board approved their plans by default because they did not object to the delay requested in the email and accepted the invitation to participate in the next meeting of the Board. It has argued that the clock should have reset when the Lisys presented their plans to the Board at the meeting on April 2, 2009.

**{¶40}** Courts have consistently held that arguments for reversal that were not raised below may not be considered for the first time on appeal. *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos. Inc.,* 67 Ohio St. 3d 274, 279 (1993). In response to the Lisys' motion for summary judgment, the Association did not argue that the trial court should interpret the Lisys' actions in response to Mr. Leemaster's email as a waiver of their contractual right to receive a decision from the Board within seven days. Therefore, this Court will not consider the argument for the first time on appeal. *See id.*

### The Trial Court's Error Was Harmless.

**{¶41}** The Association has argued that the trial court incorrectly granted summary judgment to the Lisys on four counts on which they had not moved for summary judgment. The Ohio Supreme Court has explained that "[i]t is reversible error to award summary judgment on grounds not specified in the motion for summary judgment" because disposition of a claim via reliance on an unargued ground for summary judgment denies the appellant a meaningful opportunity to respond. *State ex rel. Sawicki v. Court of Common Pleas of Lucas County*, 121 Ohio St. 3d 507, 513, 2009-Ohio-1523, at ¶27 (quoting *Patterson v. Ahmed*, 176 Ohio App. 3d

596, 2008-Ohio-362, at ¶14 (6th Dist.)).  In this case, the Lisys moved for summary judgment on counts one, three, four, and, arguably, six.  Although the trial court granted summary judgment in favor of the Lisys "on all counts in their complaint," it also determined that its holding rendered count eight moot.

{¶42} The Association was not prejudiced by the trial court's grant of summary judgment to the Lisys on counts not argued in the motion for summary judgment because counts two through eight were alternative arguments.  The trial court correctly granted the Lisys summary judgment on count one, which sought a declaration that, under the terms of the governing documents, the Board had approved the plans for the garage by failing to provide notice of its decision within seven days of submission.  That ruling rendered the remaining counts moot because they all addressed the merits of the Board's decision that the plans violated the Association's restrictions.

{¶43} Due to the fact that the trial court properly granted summary judgment to the Lisys on the claim that the Board had approved the plans, there was no longer any active controversy for the court to settle regarding the merits of that approval.  Therefore, the trial court's incorrect grant of summary judgment to the Lisys on claims involving the merits of the Board's decision did not cause the Association any prejudice.  This Court "must disregard any error or defect in the proceedings [that] does not affect the substantial rights of the parties."  Civ. R. 61.  The majority has correctly overruled the Association's assignment of error.

APPEARANCES:

DAVID W. WOODBURN, ANTHONY R. VANCANTI, and DAVID J. LINDER, Attorneys at Law, for Appellant.

MONTY L. DONOHEW, Attorney at Law, for Appellees.