[Cite as *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ASSURED ADMINISTRATION, LLC, et al., | : | |
| | : | CASE NO. CA2019-04-039 |
| Appellants, | : | O P I N I O N |
| | | 9/30/2019 |
| - vs - | : | |
| | : | |
| THOMAS YOUNG, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV089876

George M. Parker, 11935 Mason Montgomery Road, Cincinnati, Ohio 45249, for appellant, Assured Administration, LLC

Joseph Pflum, 205 West Fourth Street, Textile Building, Suite 1280, Cincinnati, Ohio 45202, for appellee, Thomas Young

Cooper & Elliott LLC, Jeffrey T. Kenney, 2175 Riverside Drive, Columbus, Ohio 43221, for appellee, Greens of Kings Meadows Homeowners Association

Bruns, Connell, Vollmar & Armstrong, LLC, Thomas B. Bruns, 4750 Ashwood Drive, Suite 200, Cincinnati, Ohio 45241, for appellee, Bethany Sarchet

Garvey Shearer Nordstrom, PSC, John J. Garvey III, 2400 Chamber Center Drive, Suite 210, Ft. Mitchell, Kentucky 41017, for appellee, Marc Davis

Helmer, Martins, Rice & Popham, Co., LPA, Paul B. Martins, 600 Vine Street, Suite 2704, Cincinnati, Ohio 45202, for appellee, Steve Yeoman

**S. POWELL, J.**

{¶ 1} Appellant, Assured Administration, LLC ("Assured"), appeals the decision of the Warren County Court of Common Pleas granting summary judgment to appellees, The Greens of Kings Meadows Homeowners Association, and its individual officers, Marc Davis, Bethany Sarchet, Steve Yeoman, and Thomas Young (collectively, the "HOA"). Assured also appeals the trial court's decision ordering it to pay the HOA's attorney fees. For the reasons outlined below, we affirm the trial court's decision.[1]

## The Parties

{¶ 2} Assured is the developer of the property making up The Greens of Kings Meadows subdivision. The subdivision is located in Kings Meadows, Warren County, Ohio. In December 2006, Assured drafted, executed, and thereafter recorded the subdivision's declaration of covenants, conditions, restrictions, liens, and reservation of easements ("DOC") with the Warren County Recorder's Office. Pursuant to DOC Section 2.2(B)(ii), Assured served as both the subdivision's developer and the subdivision's homeowners association (controlling 95% of the association's total voting power) for the next ten years. Then, in December 2016, control of the subdivision's homeowners association transitioned to the subdivision's property owners: Young as the president, Sarchet as the secretary, Yeoman as the treasurer, and Davis as the chairman of the association's design review committee ("DRC").

## Facts and Procedural History

{¶ 3} On March 7, 2017, Assured submitted building plans to the HOA (specifically, the DRC) requesting the HOA approve the construction of a single-family home on the subdivision's lone remaining unsold lot, Lot 13. There is no dispute that Lot 13 was owned

---

1. Pursuant to Loc.R. (6)(A), we sua sponte remove this appeal from the accelerated calendar for the purpose of issuing this opinion.

- 2 -

by Assured. There is also no dispute that the home Assured wanted to build on Lot 13 was below the minimum size requirements set forth in the subdivision's design review guidelines ("DRG") and contained a nonconforming front facing garage. Due to these irregularities, the HOA denied Assured's request to build a home on Lot 13 according to the building plans Assured had submitted to the HOA. The HOA issued this decision in accordance with the authority granted to it by the DOC and the DRG as set forth below.

{¶ 4} On April 19, 2018, Assured filed a complaint against the HOA alleging claims of negligence and tortious interference with a contract.[2] In support of these claims, Assured argued that the HOA had acted negligently and interfered with the contract between itself and a home buyer who had agreed to purchase a home on Lot 13 matching the building plans outlined above. According to Assured, the HOA accomplished this by "representing [to the buyer] that [Assured] had not complied with the requirements" of the subdivision's DOC. Assured alternatively requested the trial court issue a declaratory judgment finding the terms of the subdivision's DOC provided Assured, as the developer, sole discretion in how it wished to build a home on Lot 13. This includes building a home below the minimum size requirements set forth in the subdivision's DRG and with a nonconforming front facing garage.

{¶ 5} As noted by the trial court, Assured's claims call into question the proper interpretation of Sections 2.3, 8.1, 8.2, 8,4, and 12.6 of the DOC, and Sections II and III of the DRG.[3] These sections state, in pertinent part, the following:

DOC Section 2.3

Administration by Association. Subject to the rights retained by
Developer pursuant to this Declaration, the ownership,

---

2. We note that the complaint Assured filed on April 19, 2018 was its fourth amended complaint having already filed an original complaint on June 5, 2017, followed by a first amended complaint on July 11, 2017, a second amended complaint on February 6, 2018, and a third amended complaint on February 21, 2018.

3. The DRG is an attached exhibit to the DOC that is incorporated by reference therein.

operation and maintenance of the Common Property and of the administration and enforcement of this Declaration shall be by the Association in accordance with the terms and provisions of this Declaration.

## DOC Section 8.1

Architectural Control. No building, fence, wall or other structure shall be commenced, erected or maintained upon the Property, nor shall any exterior addition or change (including any change in color) or alteration thereof be made, until a detailed set of plans and specifications is submitted to and approved by the Board.  Notwithstanding the foregoing (1) initial construction of Dwelling Units and improvements by a Builder shall be under the exclusive control of the Developer as provided in Section 8.4, below and (2) until all Dwelling units are built (i) the right of architectural control shall be vested in the Developer, and (ii) all references in this Section 8.1. to the Board shall be deemed to mean the Developer.

## DOC Section 8.2

Enforcement. In the event of a violation of the provisions of this Article 8, the Association shall have the right to enforce this Article by any proceedings authorized in this Declaration, the By-Laws, or by law.  In the event that the Association fails to enforce the provisions of this Article 8, the Developer shall have the right to enforce this Article upon prior written notice to the Association.

## DOC Section 8.4

Approval of Plans by Developer. Each Builder, prior to initial construction of a Dwelling Unit and/or accessory structures on a Lot shall deliver its plans and specifications to the Developer of such plans and specifications (as defined by Section 8.1, above) for approval under the Design Review Guidelines attached as Exhibit C.  Such approval of plans and specifications by Developer shall be conducted in the same manner and in the same time frame as set forth in Section 8.1, above.  Developer shall have all legal and equitable remedies available under this Declaration to enforce their decision against Builders, Owners, or their successors.

## DOC Section 12.6

Enforcement. The Association shall have the right to enforce these covenants and restrictions.  In the event that the Association fails to enforce these covenants and restrictions, the Developer shall have the right to enforce these covenants

and restrictions upon prior written notice to the Association. * * * In the event of a violation of the provisions of the Articles or By-Laws, the Association shall have the right to enforce any covenant or restrictions by proceedings authorized in this Declaration, the Articles, By-Laws or by law.

## DRG Section II

### Design Review Committee

The Declarant shall be the design review committee (hereinafter, the "DRC") and will review plans and specifications for homes to assure that the best decisions are made regarding sitting, materials, colors, building heights, driveway layout and location, landscaping and other matters which are proper to allow for the harmony among Dwelling Units and other Structures, landscaping and drainage on the Property, in order to protect property values of the Property.

## DRG Section III

### Site Consideration

The DRC has complete authority to deny approval of a Structure on a Lot if it reasonably determines that the size, scale or character of the Structure is incompatible with the Lot or with neighboring Structures.

{¶ 6} Upon receiving Assured's complaint, the HOA filed an answer and counterclaims against Assured. As part of its counterclaims, the HOA requested the trial court issue a declaratory judgment contrary to the declaratory judgment requested by Assured; i.e., a declaratory judgment finding the terms of the DOC did not provide Assured with the sole discretion in how it wished to build a home on the subdivision's Lot 13. After filing competing motions for summary judgment, the trial court granted summary judgment to the HOA. The trial court also ordered Assured to pay the HOA's attorney fees. The trial court's decision, however, left remaining the HOA's counterclaims against Assured. The trial court issued this decision on February 1, 2019.

{¶ 7} In granting the HOA's motion for summary judgment, the trial court rejected Assured's claim that the terms of the DOC plainly and unambiguously granted it, as the

developer, sole discretion on how it wished to build a home on the subdivision's Lot 13. Specifically, the trial court found the terms set forth in the DOC were ambiguous because Assured, as the developer, "cannot have sole discretion [in how it wished to build a home on Lot 13] yet also give the enforcement authority to the HOA." The trial court found this to be the case upon finding "[i]t makes no sense" that Assured would have submitted its design plans to the HOA for approval "if the DOC and the [DRG] are clear that [Assured] has sole discretion to approve the design plans."

{¶ 8} On February 28, 2019, Assured moved the trial court to reconsider its decision, or in the alternative, to include Civ.R. 54(B) language in its decision to allow for an immediate appeal. Pursuant to Civ.R. 54(B):

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

{¶ 9} On April 5, 2019, the trial court issued an agreed entry that entered a final judgment to the HOA in regard to the parties' competing requests for a declaratory judgment. As part of that agreed entry, the trial court included language expressly finding that "there is no just reason for delay" of an appeal from its decision granting the HOA's motion for summary judgment and order requiring Assured to pay the HOA's attorney fees.

**Appeal**

{¶ 10} Assured now appeals the trial court's decision, raising the following single assignment of error for review.

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEES SUMMARY JUDGMENT ON THEIR CLAIM FOR DECLARATORY JUDGMENT AND IN DENYING APPELLANT SUMMARY JUDGMENT

ON ITS CLAIM FOR DECLARATORY JUDGMENT.

{¶ 12} In its single assignment of error, Assured argues the trial court erred by granting summary judgment to the HOA. Assured also argues the trial court erred by ordering it to pay the HOA's attorney fees. Finding no merit to either of Assured's claims, the trial court's decision is affirmed.

Summary Judgment

{¶ 13} Assured initially argues that the trial court erred by granting summary judgment to the HOA on its declaratory judgment claim. We disagree.

{¶ 14} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, LLC v. Dameron*, 12th Dist. Clermont No. CA2015-09-073, 2016-Ohio-878, ¶ 16, citing *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). Pursuant to Civ.R. 56, a trial court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶ 15} A trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., LLC*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-

Ohio-3014, ¶ 14. Summary judgment is therefore proper "if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party." *Lloyd v. Ernst*, 12th Dist. Warren No. CA2018-05-058, 2019-Ohio-756, ¶ 15, citing Civ.R. 56(C); and *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.).

{¶ 16} Assured claims the trial court erred by granting summary judgment to the HOA because it misinterpreted the otherwise plain and unambiguous language found in the subdivision's DOC and corresponding DRG. Specifically, Assured argues the trial court erred by finding the language contained within the DOC and DRG did not clearly and unambiguously provide it with the sole authority to approve initial building plans and designs regardless of the HOA's objections. Assured's claim is based on the interpretation of the DOC and the DRG incorporated by reference therein.

{¶ 17} A declaration, such as the DOC in this case, is a contract. *Lisy v. Mayfair Estates Homeowners Assn.*, 12th Dist. Summit No. 25392, 2012-Ohio-68, 2012-Ohio-68, ¶ 29. "In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ." *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 29. "Where the terms of the contract are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties." *State ex rel. Lee v. Plain City*, 12th Dist. Madison No. CA2017-01-002, 2017-Ohio-8931, ¶ 21 citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55 (1989). That is to say "[a] contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2012-

07-061, 2010-Ohio-5186, ¶ 12. This court reviews issues of contract interpretation de novo. *Pierce Point Cinema 10, LLC v. Perin-Tyler Family Found., LLC*, 12th Dist. Clermont No. CA2012-02-014, 2012-Ohio-5008, ¶ 10.

**{¶ 18}** After a full and thorough review of the record, we agree with the trial court's decision finding the DOC ambiguous as to whether it is Assured or the HOA who has the authority to approve building plans for the construction of homes located within the subdivision. This is because, as noted by the trial court, Assured, as the developer, "cannot have sole discretion [in how it wished to build a home on Lot 13] yet also give the enforcement authority to the HOA." "The construction of a contract should attempt to harmonize all the provisions of the document rather than to produce conflict in them." *R.L.R. Invs., LLC v. Wilmington Horsemens Group, LLC*, 12th Dist. Clinton No. CA2013-09-017, 2014-Ohio-4757, ¶ 20 Therefore, when construing the relevant sections found in the DOC, we agree with the trial court's decision finding it was HOA who has the authority to approve building plans for the construction of homes located within the subdivision. This, as the trial court found, makes sense when considering there would have been no reason for Assured to submit its building plans to the HOA if it had the sole discretion to approve those plans on its own.[4]

**{¶ 19}** Despite this, Assured argues this court's decision in *O'Bannon Meadows Homeowners Assn. v. O'Bannon Props., LLC*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395, mandates this case be reversed and remanded to the trial court. However, unlike in this case, the declaration of covenants at issue in *O'Bannon* did not give

---

4. We note that Assured claims for the first time on appeal that it did not submit its building plans to the HOA for approval but rather to give the HOA notice "of the approval and the existence of a contract with third party buyers." However, while this court reviews a trial court's decision granting summary judgment de novo, Assured cannot raise new arguments for the first time on appeal. *See Estes v. Robbins Lumber, LLC*, 12th Dist. Clermont No. CA2016-02-011, 2016-Ohio-8231, ¶ 24 ("parties are not given a second chance to raise arguments that they should have raised below").

the homeowners' association the authority to enforce its design review guidelines after control of the association was transitioned from the developer to the subdivision's home owners. *Id.* at ¶ 23 (passage of control from the developer to the homeowners' association did not grant the homeowners' association "the authority to amend or enforce" the subdivision's design review guidelines but only "the right to regulate and control itself"). Therefore, because the facts in *O'Bannon* are distinguishable from the case at bar, this court's holding in *O'Bannon* that "[w]here the [declaration of covenants] does not provide the [homeowners' association] with specific power or authority to act or regulate, the [homeowners' association] may not act or seek to regulate on its own accord" is inapplicable. *Id.* at ¶ 24. Accordingly, contrary to Assured's claim, this court's decision in *O'Bannon* does not mandate this case be reversed and remanded to the trial court.

<u>Attorney Fees</u>

{¶ 20} Assured also argues the trial court erred by ordering it to pay the HOA's attorney fees. However, as the trial court found, Section 2.4 of the DOC and Section VII of the DRG entitles the HOA to recover its attorney fees in defending against Assured's claims. This remedy is specifically provided for in DRG Section VII, which, as relevant here, states that the HOA "shall be entitled to recover damages, including attorney fees and litigation expenses incurred" under these circumstances. Therefore, because the subdivision's DOC and DRG allow the HOA to recover its attorney fees in this case, Assured's claim that the trial court erred by ordering it to pay the HOA's attorney fees lacks merit.

**Conclusion**

{¶ 21} In light of the foregoing, having found no merit to any of the arguments raised by Assured herein, Assured's single assignment of error challenging the trial court's decision granting summary judgment to the HOA lacks merit and is overruled.

{¶ **22**} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.