## Moore, et al. v. Shifflett.

(Decided February 10, 1920.)

### Appeal from Butler Circuit Court.

1. Gifts—Causa Mortis—Symbolic Delivery.—A gift causa mortis may be perfected by a symbolical delivery without an actual delivery, if it clearly appear that the donor intended to make a gift.

2. Gifts—Causa Mortis—Parol Trust.—Where an old lady in feeble health told her sister to go to a certain bureau drawer, take out and bring to her a package containing money, and after counting the money in the presence of the sister, again tied it up in a package, delivered it to the sister and told her to put it in a clothes press which stood immediately behind the chair of the invalid and to lock the clothes press and to keep the key until after the death of the donor, and then to take the money and give it to a named relative of both the donor and her sister, and the money remained in the clothes press until after the death of the donor, the delivery of the key to the sister, and her retention threof with the donor's consent until after the death of donor was a symbolical delivery of the money in the clothes press to the sister for the use and benefit of the donee and was enforceable either as a gift causa mortis or a parol trust.

3. Wills—Evidence—Introduction of Letter.—A letter found among the valuable papers of a testatrix with the name of her brother signed thereto, and which she regarded as the letter of her brother, may be introduced as evidence upon the trial of a will case to show why the testatrix was not disposed to give any of her property to her brother or to his children, even though it is not established by testimony that the letter in question was written by the brother, or that it was in his handwriting.

W. A. HELM, E. N. MAYHUGH and W. R. GARDINER for appellants.

N. T. HOWARD, G. V. WILLIS, A. THATCHER, SIMS, RODES & SIMS and GILLIAM & GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Eliza Shifflett, wife of appellee, Jacob Shifflett, departed this life in April, 1918, having made and executed a last will and testament giving all of her property to her husband. Shortly after her death her sister, Mrs. Moore, and nephew, J. C. Gardiner, instituted an action against Jacob Shifflett to recover of him the possession of $1,125.00 cash, $900.00 of which was in gold and the balance in greenback and silver, which it was alleged the decedent had given in trust to Mrs. Moore for the use and benefit of her nephew, J. C. Gardiner, and to be delivered by the said Mrs. Moore to Mr. Gardiner on the death of the donor. Mrs. Shifflett and her brothers and sisters in their early life inherited a small farm. They agreed among themselves that the farm should be held in trust for the use and benefit of the unmarried children and as they married off they should relinquish their interest in the farm. In the course of time all the children married and left Eliza alone on the farm. In the meantime, however, another sister who had lived with her for a number of years sold and conveyed to Mrs. Shifflett a one-half undivided interest in the said farm. This deed was placed to record by Mrs. Shifflett, and she continued to live there and claim the whole of the farm until her death in 1917, at which time she was about eighty-one or eighty-two years of age. To recover their interest in this farm the brothers and sisters of Mrs. Shifflett instituted a second action against Jacob Shifflett, setting up their claim to the land. These two actions were shortly thereafter consolidated and heard and decided at the same time by the court below in favor of appellee, Jacob

Shifflett, and Mrs. Moore and the other plaintiffs below prayed and are now prosecuting this appeal.

(1) Let us first consider the judgment in the action to recover the $1,125.00 alleged to have been given by Mrs. Shifflett to Mrs. Moore in trust for her nephew, J. C. Gardiner. The evidence shows that Mrs. Shifflett, who had been twice married, had accumulated some money by raising stock and otherwise running the farm which she inherited from her relative. For some three or four years before her death she had been in feeble health. During this time she made a will giving all of her property to her nephew, J. C. Gardiner, and this will was delivered to his mother to be kept by her, but appellee hearing of the will by some means caused it to be revoked and another will made giving all of the property of Mrs. Shifflett to him, and this will has been probated and is not contested. Under this paper the husband claims all of the property of Mrs. Shifflett, including the $1,125.00 in cash found on the premises after her death.

According to the evidence of Mrs. Moore, a sister of Mrs. Shifflett, she was visting at the home of Mrs. Shifflett about a year before the death of testatrix, and while waiting on her Mrs. Shifflett asked her to go to a certain drawer in the dresser in a nearby room and bring a package to her. This Mrs. Moore did and delivered it to Mrs. Shifflett, who opened the package, which contained money, and counted it. There was $900.00 in gold and $175.00 in greenback, and $50.00 in silver, a total of $1,125.00. After the money was counted Mrs. Shifflett again tied up the package and gave it to Mrs. Moore and instructed her to put it in a clothes press which stood just back of the chair in which the invalid sat, telling Mrs. Moore to lock the press, which she did, and then Mrs. Shifflett delivered the key to Mrs. Moore, saying to her in substance to give the money to Cecil Gardiner, their nephew, after the death of the donor but not to let appellee, Jacob Shifflett, know about the money. It is further shown by the evidence that after the death and burial of Mrs. Shifflett the husband, Jacob, took charge of her affairs and gathered up what money he could find that belonged to the decedent. On the following day Mrs. Moore and J. C. Gardiner came to the house and Mrs. Moore asked Jacob if he had found the money, whereupon he answered that he had found it. She then told him she did not think he had found it all as he had only a small amount which

belonged to the deceased. She did not have the key to the clothes press, having by oversight failed to bring it with her, but she knew a secret way of opening the press, and entering that way she brought forth the package containing the $1,125.00 in the same condition that it was when she placed it there several months before. When it was untied and the contents exhibited, the husband was greatly surprised and agitated, declaring that he did not know his wife had the package or that she had any money except that which he had already found. He then said he wanted to put it back in the press where it had been and he would leave it there so long as he lived. Mrs. Moore and Gardiner left the house without telling Jacob that this money had been given by Mrs. Shifflett to Mrs. Moore for the use and benefit of Gardiner. On the day following they returned to the Shifflett home for the purpose of making known to Jacob the wish of the deceased with reference to the package of money only to learn that Jacob had in the meantime carried the money to Morgantown where he had invested it in bonds, and further that he was claiming it as his property under the will of his wife. When Jacob refused to surrender the money, or its equivalent, the action first above mentioned was instituted.

It is the contention of appellants, Gardiner, et al., who claim the money, that the delivery of the money by Mrs. Shifflett to Mrs. Moore to be placed in the press and locked up and the key held by Mrs. Moore with instructions to deliver the money to Gardiner after the death of the donor, amounts to a parol trust which is enforceable in equity. They also aver that the facts constitute a delivery of the gift, if not actual delivery at least a symbolical delivery which was sufficient to execute a gift *causa mortis* if not sufficient to perfect a gift *inter vivos*.

For appellee it is contended that the facts are not sufficient to constitute a gift *inter vivos* or *causa mortis* because there was no delivery either actual or constructive, and that a parol trust is not enforceable, but even if enforceable the expression parol trust can mean no more than a gift *inter vivos;* and as the facts are insufficient to support a gift *inter vivos* they are sufficient to support a parol trust. A gift *inter vivos* is one made by one or more persons to another or other persons without reference to the future and to come into immediate and absolute effect. In such gift no further act of the parties

is needed to give it effect. One of the essential things, however, is delivery. Without actual possession the title does not pass. A mere intention or naked promise to give, without some act, to pass the property is not a gift. In other words the property must be surrendered to the donee and he must take and hold complete dominion over it and the donor cannot revoke the gift. Roche v. George's Extrx., 137 Ky. 607.

To constitute a valid gift *inter vivos* the purpose of the donor to make the gift must be clearly and satisfactorily established, and the gift must be completed by actual, constructive or symbolical delivery without power of revocation. 20 Cyc. 1193.

A gift *causa mortis* is defined to be a gift of personal property made by a person in expectation of death then imminent, and on an essential condition that the property shall belong fully to the donee in case donor dies, as anticipated, leaving the donee surviving him, if the gift is not in the meantime revoked, but not otherwise. 20 Cyc. 1228. Merriwether v. Morrison, 78 Ky. 572.

The chief distinguishing feature between a gift *inter vivos* and one *causa mortis* is that in the first instance the gift must be accompanied by actual or symbolical delivery and must be absolute and irrevocable; while in the second instance the gift is made by one in expectation of immediate death and is to take effect only in case of death of donor leaving the donee surviving, and only then in case the donor shall not in the meantime revoke the gift. In other words, a gift *inter vivos* cannot be revoked while a gift *causa mortis* may be revoked by the donor at any time before his death. Hall v. Howard, Rice 1, 314.; 33 Am. Dec. 115; McCoy, Admrx. v. McCoy, 126 Ky. 783.

A parol trust is a right of property created without writing by one party for the benefit of another. A trust is a confidence reposed in one person called the trustee for the benefit of another called the *cestui que trust*, with respect to property held by the former for the benefit of the latter. It implies two estates or interests, one equitable and the other legal.

The facts recited above were found to exist by the chancellor. Undoubtedly the gift from Mrs. Shifflett to her nephew was revocable at any time, but it was not revoked by her and after her death it could not be revoked by another. At the time she made the gift she had

the power to do so. She told her sister to bring her the package and when this was done Mrs. Shifflett counted the money in the presence of her sister and tied the package up, delivered it to her sister and instructed her where to put it and to lock it up, and when this was done gave her sister the key and directed her to give the money to their nephew after the death of Mrs. Shifflett. This was a symbolical, if not an actual, delivery of the money to Mrs. Moore for the use and benefit of Gardiner. Mrs. Moore accepted the money, at least symbolically, in trust for Gardiner because she received and held the key to the press in which the money was placed. It has been held many times by this and other courts that where a gift is delivered by one person to another for the use and benefit of a third person, such a trust is enforceable, and further that the delivery of a key or other means of holding and possessing the gift, is a constructive delivery of the gift itself.

In the case of Stephens, Admr. v. King, 81 Ky. 425, we held that the delivery of the key to a desk in which was a letter containing a full description of certain notes and bonds was a sufficient delivery to make the gift *causa mortis* complete.

A gift has been sustained where the donor delivered to the donee a key of his desk in which he kept papers and where the owner of stocks, bonds and bank books, at the time in a cupboard in the room, gave the key of the cupboard to his daughter and said that all that was in the cupboard was hers, and she took out all the papers and books, looked them over and put them back, locked the cupboard and put the key in her pocket, all in the presence of the donor and retained the key until his death; this was held to be a sufficient delivery. Where the circumstance of the delivery of the key would sustain a gift if the delivery had been made direct to the donee, it is sufficient if the delivery is made to a third person for the donee. 12 R. C. L. 961; Pyle v. East, 3 A. L. R. 889, and cases cited.

The rule is well settled, however, that delivery need not be made to the donee personally, but may be made to a third person as agent or trustee, for the use of the donee; and under such circumstances as that indicate the donor relinquishes all right to the possession or control over the property, and intends to vest a present title in the donee. 20 Cyc. 1198; Reynolds v. Reynolds,

92 Ky. 556; Forsyth v. Kreakbaum, 7 T. B. Monroe 97; Burge v. Burge, 76 S. W. 873.

Where one delivers a gift *causa mortis* to another for the use and benefit of a third person and it is not revoked, the third person may, after the death of the donor, enforce the gift in the same way and manner that he could have enforced it had the gift been delivered directly to him instead of to another in trust for him. With equal force is this rule applied to a gift, the delivery of which is symbolically made. If a gift *causa mortis* would be valid if the delivery be symbolical only, as by delivery of a key to the receptacle in which the gift is located, the gift would likewise be valid if the key was delivered to a second person to be held until the death of the donor and then turned over to the third person for whose benefit the gift was made. This is but a parol trust and may be enforced. Whether we denominate the gift of the money by Mrs. Shifflett to Mrs. Moore for the use and benefit of their nephew, Gardiner, a gift *causa mortis* or parol trust makes little difference, because it might be sustained as either under the facts of this case. Williamson v. Yeager, 91 Ky. 287; Krankel v. Krankel, 104 Ky. 105. Mrs. Moore was the trustee of the parol trust and received the money symbolically for the use and benefit of Gardiner. The delivery of the key to the chest in which the money was locked was such a delivery as was sufficient to have invested Mrs. Moore with that character of dominion over the gift as to bring it within the rule governing gifts *causa mortis*. We, therefore, conclude that the chancellor erred to the prejudice of appellants in holding the gift of the money void for want of a sufficient delivery.

It is contended, however, by appellee that in as much as the testatrix gave him all of her property by will executed months after the alleged gift to Mrs. Moore or Gardiner, such gift, if it were ever valid, was revoked by the execution of the testamentary paper, and the money passed under the will. This, however, is not the rule. Such a gift is not revocable by a subsequent will, for as a will does not operate until the decease of the testator, and the donor, at his decease, is divested of his property in the subject of the gift, no right or title in it passed to his representatives. 12 R. C. L. 969, 20 Cyc. 1245; Brumson v. Henry, 140 Ind. 455; Hoehn v. Stuttman, 71

Mo. App. 399; Emery v. Clough, 63 N. H. 552. See notes 99 Am. St. Reports 913.

(2) While the second suit mentioned above was instituted primarily for the division of the land on which Mrs. Shifflett lived with her husband at the time of her death, on the averment that said land had descended to Mrs. Shifflett and her brothers and sisters in equal portion, and all the plaintiffs in the second suit had conveyed to Mrs. Shifflett their interests in the land, the real purpose of the suit was to determine who had title to the land.

It is admitted by appellee, Jacob Shifflett, that the plaintiffs owned a joint interest in the land with Mrs. Shifflett years before, but it is contended that Mrs. Moore sold and conveyed her interest to Mrs. Shifflett and that Mrs. Shifflett having taken a deed to the whole of the property and having held and adversely claimed the whole of the same for more than fifteen years next before the institution of the action, the plaintiff's right, if any he ever had, to said land was barred and tolled. Mrs. Shifflett and one of her sisters who had lived upon the land for years before their marriage, paid off and discharged a purchase money lien against the land with the express understanding with the other joint owners that the two unmarried sisters should have the whole boundary of land. Some time after this payment was made Mrs. Moore, who had contributed to the payment, sold and conveyed an undivided one-half interest in said lands to Mrs. Shifflett, and this deed was placed to record. The other children did not claim any interest in the land and Mrs. Shifflett asserted title to the whole of it. Under such facts Mrs. Shifflett's claim ripened into a perfect title by adverse possession if she did not otherwise acquire title. Hence, the trial court did not err in adjudging Jacob Shifflett the owner of said boundary of land under the will.

The judgment is, therefore, affirmed with respect to the lands in controversy, and reversed with respect to the gift of money, with directions for further proceedings not inconsistent with this opinion.

Judgment affirmed in part and reversed in part.