## Newlon et al. v. Newlon et al.

May 13, 1949.

As Modified and Extended June 21, 1949.

Lawrence S. Leopold for appellants.

James H. Gold, Niles & Will and Robert W. Zollinger for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing in part.

A few days after the birth of twin sons, Merle and Erle, their father, Dr. Merle C. Newlon, Sr., started a savings account for them in their name with a building and loan association. This was in February, 1924. The account was maintained throughout the years. When they were nearly twenty-one years old and in the armed services, on August 4, 1944, their father had the association issue a certificate of "optional savings share account" for $2,700 to "Merle Newlon, Jr., and/or Dr. Merle C. Newlon." This was the amount of the account plus a small sum added by the father. He testified Erle was in trouble and had become "mentally, physically and morally" unable to handle money. It was on that account, he stated, that he had procured the certificate. Dr. Newlon had obtained Merle's signature to the necessary paper to have the savings account converted or so evidenced, and having qualified as Erle's guardian he had executed the same as such for and in behalf of Erle. Next year, in 1945, the father and mother became estranged and she sued for divorce. Merle wrote his mother from Germany assuring her of his loyalty and support. He encouraged her to get everything she could from his father. The letter contained an expression which the mother regarded as authorizing her to cash Merle's interest in the savings certificate, and she presented it to the association for that purpose. Dr. Newlon learned of this and saw the letter. He then made demand for payment to himself of the entire sum. The association declined to recognize either claim, and Dr. Newlon filed this suit against it, his son, Merle, and

former wife. He prayed that he be adjudged the owner of the account. Merle Newlon and his mother jointly prayed that she, as his assignee, be held entitled to one-half the sum represented by the certificate. The association assumed the position of stakeholder, but brought in Erle Newlon as a party defendant of unsound mind, through his father as his committee. An amendment stated that Erle had subsequently been adjudged competent. Erle by an answer and counterclaim sought to have it adjudged that he was entitled to one-half the account. The circuit court was of opinion that "the title to the stock in the Portland Federal Savings & Loan Association was placed by the plaintiff in the name of his children for convenience to be used for their education or other purposes as the plaintiff saw fit and was not intended as a gift. Therefore, the plaintiff is entitled to the ownership of the stock and to judgment as prayed." Merle Newlon and his mother appeal from the judgment. Erle Newlon has not prosecuted an appeal.

Supplementing the foregoing statement of undisputed facts, we have the uncontradicted evidence that from the beginning the family regarded the savings account as belonging to the boys. Mrs. Newlon testified that the account had really been started by the boys' paternal grandmother, and she and Merle testified that from time to time the grandmother had given the boys sums of money which were promptly placed in the savings account. The father disputed this and insisted that his mother had never been able to make any such gifts and had not done so and that he, and he alone, had made the payments. Under the view we take of the case this is immaterial.

Other than the signatures of the officers of the association the certificate issued August 4, 1944, is as follows:

"Portland Federal Savings & Loan Association, Louisville, Kentucky, Certificate No. S-14539, issued for $2700.00. Investment Share Account. This certifies that Merle Newlon, Jr. and/or Dr. Merle C. Newlon, is a member of the Portland Federal Savings & Loan Association and holds a $2700.00 investment share account of said Association, subject to its charters and by-laws and to the laws of the United States of America."

The use of this hybrid word or expression of recent

origin has been frequently condemned as improper and confusing. See Boggs v. Commonwealth, 285 Ky. 558, 148 S. W. 2d 703; 3 Words and Phrases, Perm. Ed., And/Or, page 450. But the term or word is now recognized in Webster's New International Dictionary, 1944 Edition, as meaning "either *and* or *or*." Its interpretation depends upon the circumstances, and it must be construed to express the intention of the parties to the transaction. 3 C. J. S., And/Or, page 1069. As stated in Hicks v. Haight, 171 Misc. 151, 11 N. Y. S. 2d 912, 915, "the practical construction placed on the expression by the parties, and the circumstances surrounding execution of the agreement, may be of some aid in determining which interpretation will best accord with the equities of the situation." Since Dr. Merle must be charged with the use of the indefinite and ambiguous term, it will be construed against him. In view of the circumstances we are of opinion that "and/or" in the certificate was intended to show at least that Merle had a joint interest in it, and that is one-half under the usual construction and presumptions. Its use certainly does not indicate any purpose to deprive Merle of what had always been regarded as his half interest in the account. There was merely a conversion of the current savings account into the new and definite form without the surrender of any right he had. The certificate is not inconsistent and does not affect the initial ownership of the account so far as Merle's interest is concerned.

Dr. Newlon testified that when he made the subscriptions for the building and loan shares (for all essential purposes, opening the savings account) his intention was: "I put this money in the Building and Loan until such time as the boys would be capable of handling money, or until the time as they were good boys and showed the proper filial affection, that if that time arrived I could give them the money if I so wished. If not, in case of my accidental death, the money would be readily available to the boys without court, or the will or anything else." And further: "If these boys grew up sound of mind and body, capable of handling money, and showed the proper affection, I could give them the money, if I so wished. It would be easy to do." He was asked what happened to cause him to "change your program or intention with respect to this money,"

and answered: "The son, Erle, was in the Army and mentally became affected, and was sent to the hospital at Lexington, had treatment, got in trouble. At the present time he is in trouble. He is in jail at the present time. Both mentally and physically and morally was unable to handle that money so, of course, that is evidenced by the fact that I changed it there." He was further asked and answered: "Was that trouble of Erle's the occasion for your obtaining this certificate in your name and Merle's name in 1944? A. That is right." As to his reason for changing his program as to Merle, he answered that it was the letter which he had written his mother. He added that it was because Merle had not shown him the proper respect and affection.

The decision of the case turns on the real intention of the father to surrender dominion over the funds in starting and building up the savings account for his boys over a period of twenty-one years. Did he intend it as a gift to them or as a mere convenience for himself, the ultimate disposition to be made by him at some indeterminate time in the long future? The boys were scarcely a week old when the account was started. This and the further fact that it was opened and maintained in their names create the inference that the intention was to make an absolute gift. "The deposit of money to the credit of another purports on its face to transfer that credit to the beneficiary," and being infants and to their interest, their acceptance is presumed. Collins v. Collins' Adm'r, 242 Ky. 5, 45 S. W. 2d 811. All the law covering this case is fully embraced in that opinion.

Doubtless the main purpose of the accumulation of funds was to use it for the boys' education. That is the normal and commendable goal. But that does not destroy the fact of the children's beneficial right or interest in the fund, if it was otherwise unconditional. 24 Am. Jur., Gifts, sec. 44; 38 C. J. S., Gifts, sec. 36. That use was probably thwarted by the disturbances of the war, but we think the money was as much theirs as if the coins had been dropped into their dime savings bank at home.

The father's present claim of having entertained a secret reservation for more than twenty-one years of a power of revocation is contrary to his open action during

the entire period. It is not in accord with contemporaneous facts and circumstances. It is contrary to his unequivocal recognition in having Merle named as a joint owner when the current account was closed and converted into a definite certificate on August 4, 1944, when he had nearly reached legal maturity and was a soldier in the midst of war. That this was a ratification is emphasized by the fact that for Erle's part the father had executed the necessary authority to the building and loan association as his guardian and that he did not at the time make any claim to own either share personally. We are fully persuaded that the secret right of revocation was born when the father learned of Merle's having taken his mother's side in the estrangement. We have no difficulty in reaching the conclusion that there was a clear and unmistakeable intention to make a gift and that it was fully executed; hence could not be revoked or converted into a debt of his boys to himself by a subsequent change of purpose. Owsley v. Owsley, 77 S. W. 394, 25 Ky. Law Rep. 1194; Moore v. Shifflett, 187 Ky. 7, 216 S. W. 614; 24 Am. Jur., Gifts, sec. 54.

Wherefore, the judgment is reversed; but only as it affects the rights of the two appellants, Erle Newlon not being a party to the appeal.