[Cite as *Gaffin v. Schumacher Homes of Cincinnati, Inc.*, 2013-Ohio-992.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| JOSEPH GAFFIN d.b.a. Ohio Valley Drywall, | : | |
| | : | CASE NO. CA2012-09-066 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N |
| - vs - | | 3/18/2013 |
| | : | |
| SCHUMACHER HOMES OF CINCINNATI, INC., | : | |
| | : | |
| Defendant-Appellant. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012 CVH 0900

Scherner & Sybert LLC, David L. Lackey, 153 South Liberty Street, Powell, Ohio 43065, for plaintiff-appellee

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., David E. Butz, Aletha M. Carver, 4775 Munson Street, N.W., P.O. Box 36963, Canton, Ohio 44735-6963, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Schumacher Homes of Cincinnati, Inc. (Schumacher Homes), appeals a decision of the Clermont County Court of Common Pleas denying its motion to compel arbitration.

{¶ 2} Plaintiff-appellee, Joseph Gaffin d.b.a. Ohio Valley Drywall (Ohio Valley Drywall), contracted with Schumacher Homes as a subcontractor. Ohio Valley Drywall

agreed to provide drywall and painting services in homes built by Schumacher Homes, and in 2006, the parties signed a Trade Partner Agreement (Agreement). Within the Agreement, the parties agreed to arbitrate any disputes that arose from the Agreement. Contemporaneous with the Agreement, Ohio Valley Drywall also signed Scopes of Works for drywall and painting, which set forth the details and specifications for the work Ohio Valley Drywall agreed to perform. Subsequently, the parties also executed an additional Scope of Work for painting in 2008, and one in 2009. They also executed a Scope of Work for cabinet installation and trim in 2009 and 2010 respectively.

{¶ 3} In May 2012, Ohio Valley Drywall initiated suit against Schumacher Homes, alleging that Schumacher Homes owed it money for work done on various projects performed between November 30, 2009 and December 28, 2011. Ohio Valley Drywall also alleged breach of contract and unjust enrichment. On June 7, 2012, Schumacher Homes filed a motion to compel arbitration, or in the alternative, a motion to stay the proceedings. The trial court denied Schumacher Homes' motion to compel arbitration and motion to stay the proceedings, finding instead, that the arbitration clause within the Agreement applied only to the Agreement itself, and anything attached to it, rather than the unattached Scopes of Work that formed the basis for Ohio Valley Drywall's claims. Schumacher Homes now appeals the trial court's decision, raising the following assignment of error.

{¶ 4} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS.

{¶ 5} Schumacher Homes argues in its assignment of error that the trial court erred by denying its motion to compel arbitration or its motion to stay the proceedings.

{¶ 6} According to Ohio's Arbitration Act, R.C. Chapter 2711,

> A provision in any written contract, except as provided in division
> (B) of this section, to settle by arbitration a controversy that
> subsequently arises out of the contract, or out of the refusal to

- 2 -

perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.[1]

R.C. 2711.01(A). R.C. 2711.02(B) provides that when a valid arbitration clause exists, a court can stay the proceedings in the trial court, and R.C. 2711.03(A) permits a court to compel arbitration.

{¶ 7} Arbitration is a favored method of dispute resolution in the law. *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471 (1998). The strong public policy in favor of arbitration is codified in Ohio's Arbitration Act, as quoted above, which requires a court to stay an action if it involves an issue subject to an arbitration agreement. R.C. 2711.01(A); *see also ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 500 (1998). Where there are doubts regarding the application of an arbitration clause, such doubts should be construed in favor of arbitrability. *Council of Smaller Enterprises v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 666 (1998).

{¶ 8} A presumption favoring arbitration arises when the claim in dispute falls within the scope of an arbitration provision. *Union Township, Clermont County, v. Union Township Professional Firefighters' Local 3412*, 142 Ohio App.3d 542 (12th Dist.2001), citing *Williams,* 83 Ohio St.3d at 471. "An arbitration clause in a contract should not be denied effect unless it can be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute." *Union Township* at 548. Interpreting the meaning and construction of contracts involves a question of law which appellate courts review de novo. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. No. CA2006-07-021, 2007-Ohio-

---

1. Division (B) applies to real estate transactions.

1655, ¶ 7. Therefore, the question of whether a particular claim is arbitrable is one of law for this court to decide. *Id.*

{¶ 9} The parties entered into the Agreement, which contains the following arbitration clause,

> all acts, statements, omissions, disputes, claims or controversies arising from or relating to, in any manner, The Agreement of the transactions or other matters contemplated therein, whether such claim is based in contract of [sic] negligence or other tort theory of law, shall be resolved by binding arbitration by one arbitrator who is selected by the mutual consent of the parties.

We disagree with the trial court's finding that the arbitration clause did not apply because Ohio Valley Drywall's complaints were specific to the Scopes of Work rather than the Agreement itself. Instead, the record is clear that the parties intended and knew that the Scopes of Work were a part of the Agreement, and that any subsequently-enacted Scopes of Work directly related back to the original Agreement. Any claims that Ohio Valley Drywall brings regarding the Scopes of Work are therefore subject to the arbitration clause within the Agreement.

{¶ 10} The Agreement initially states, "in accordance with the specifications for the Trade Partner's craft or trade which are set forth on the blueprint, the Scope of Work, and/or the Purchase Order which the Contractor has supplied the Trade Partner and which is attached to this Agreement and made a part of it." The Agreement goes on to state,

> In consideration of the mutual promises set forth in this Agreement, the parties agree as follows: [1] THE WORK: The "Work" which Trade Partner will perform will consist of providing all materials, tools, equipment, permits, transportation, and other facilities as well as all labor, including proper supervision, *required for the satisfactory completion of all functions of trade identified on the Scopes of Work, Prints, and/or Purchase Orders.* * * * Trade Partner acknowledges that he/she has examined and is familiar with all requirements set forth in the various documents and specifications *attached to this Agreement.*

- 4 -

(Emphasis added.) The trial court found that these provisions do not apply because the various Scopes of Work included in the record were not physically attached to the Agreement. We disagree.

{¶ 11} "A writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Envirespose, Inc. v. Franklin County Convention Facilities Authority*, 78 Ohio St.3d 353, 361 (1997). "Multiple documents should be construed together if they are part of the same transaction." *Mantua Mfg. Co. v. Commerce Exch. Bank,* 75 Ohio St. 3d 1, 5 (1996).

{¶ 12} The record indicates that Gaffin signed the Agreement as owner of Ohio Valley Drywall on the same day that he signed the painting and drywall Scopes of Work, June 12, 2006, and that Schumacher Homes' representative signed both the Scopes of Work and Agreement on behalf of Schumacher Homes four days later, on June 16, 2006. The Agreement also very clearly references the Scopes of Work as being attached to the Agreement, and makes reference to the Scopes of Work throughout the Agreement. Even if the original Scopes of Work, or those enacted after the Agreement was already executed, were not physically attached to the Agreement, the terms of the Agreement clearly incorporate the Scopes of Agreement through the express language quoted above, that "the Scope of Work * * * which the Contractor has supplied the Trade Partner and which is *attached to this Agreement and made a part of it * * *.*" (Emphasis added.)

{¶ 13} Although the trial court found that the Scopes of Work were not a part of the Agreement, there is no indication that the Scopes of Work enacted after the Agreement and subsequent to the original Scopes of Work had the effect of superseding or terminating any terms in the Agreement, specifically the clause regarding arbitration. Instead, the Scopes of Work clearly indicate that their sole purpose is to define the trade partner's responsibility

when performing subcontractor services. Each Scope of Work begins with a clause on General Information, which sets forth the purpose of the Scope of Work as it relates to each service, such as painting, drywall, trim work, and cabinet installation. According to the Scope of Work on drywall,

> the purpose of this document defines both Schumacher Homes of Cincinnati, Inc. and the Trade Partner's responsibilities in the Drywall phase of construction. It is intended as a checklist that will define Schumacher Homes of Cincinnati, Inc. standard of quality and professionalism. The Drywall Trade Partner's work will not be considered complete until all specifications herein contained are fully met.

While the Scopes of Work clearly set forth Schumacher Homes' expectations, they do not in any way supersede or terminate the Agreement. Nor do the Scopes of Work set forth the same contractual provisions that are otherwise stated in the Agreement such as ownership and use of drawings, governmental requirements, weekly schedules, waiver of liens, safety, variance purchase orders, payment terms, decision to withhold payment, price increases, warranties, indemnification, insurance, termination, and specifically, arbitration. As the Agreement contains these clauses, it is clear that the Agreement controls the business relationship between the parties, while the Scopes of Work relate only to the methodology regarding completion of services. For that reason, when Schumacher Homes' requirements changed regarding services such as painting, a new Scope of Work was issued, rather than a new Agreement.

{¶ 14} As previously quoted within the Agreement's "Work" section, the Agreement indicated that the Scopes of Work set forth the requirements and terms that a trade partner was required to perform in order to complete satisfactory work. Therefore, the Scopes of Work acted as a methodology for informing the trade partner of Schumacher Homes' requirements and directed the trade partner in the satisfactory completion of the related job/service. The Scopes of Work, however, did not change the general business relationship

between the parties every time a new Scope of Work was executed, nor was it necessary to execute a new Agreement each time a new Scope of Work was issued. In fact, and even once Ohio Valley Drywall began to perform additional services such as cabinet installation and trim work, the parties did not terminate the Agreement or ever enter into any new or additional Agreement. Instead, the parties abided by the terms of the Agreement since its execution in 2006 for the entire length of their business relations, and only updated the Scopes of Work to indicate new methodology for completing work satisfactorily.

{¶ 15} Again, we are reminded that any doubts regarding the application of an arbitration clause should be construed in favor of arbitrability, and that an arbitration clause in a contract should not be denied effect unless it can be determined with *positive assurance* that the clause is not susceptible to an interpretation that covers the asserted dispute. Although not physically attached to the Agreement, the Scopes of Work clearly relate to and are incorporated within the Agreement. Any slight reservation that may otherwise arise from the fact that the Scopes of Work were not physically attached to the Agreement, whether originally or subsequently, is therefore construed in favor of arbitrability and we do not determine with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

{¶ 16} Having determined that the arbitration clause is binding on the Scopes of Work, the issue becomes whether the claims brought by Ohio Valley Drywall were those subject to the arbitration clause. "Where the arbitration clause is broad, only the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators." *Composite Concepts Co., Inc. v. Berkenhoff*, 12th Dist. No. CA2009-11-149, 2010-Ohio-2713, ¶ 26, quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir.2003).

{¶ 17} The arbitration clause itself is broad because it applies to "all acts, statements,

omissions, disputes, claims or controversies arising from or relating to, in any manner, The Agreement of the transactions or other matters contemplated therein, whether such claim is based in contract of [sic] negligence or other tort theory of law." Therefore, any of Ohio Valley Drywall's claims regarding unpaid accounts, breach of contract, and unjust enrichment clearly arose from the Agreement, even if such claims were made specific to work performed according to and pursuant to the Scopes of Work.

{¶ 18} After reviewing the record, we find that Ohio Valley Drywall's claims are subject to the arbitration clause. As such, Schumacher Homes' assignment of error is sustained. The trial court's decision is reversed, and the matter is remanded so that the trial court can stay the proceedings and compel arbitration.

{¶ 19} Judgment reversed and remanded.

RINGLAND, P.J., and M. POWELL, J., concur.