[Cite as *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 2013-Ohio-2395.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

O'BANNON MEADOWS HOMEOWNERS
ASSOCIATION, INC.,

      Plaintiff-Appellant,

- vs -

O'BANNON PROPERTIES, LLC, et al.,

      Defendants-Appellees.

:
:
:
:
:
:
:
:

CASE NO. CA2012-10-073

O P I N I O N
6/10/2013

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CVH-1211

Howard D. Cade, III, 526-A Wards Corner Road, Loveland, Ohio 45140, for plaintiff-appellant

James A. Matre, 11800 Conrey Road, Suite 200, Cincinnati, Ohio 45249, for defendants-appellees

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, O'Bannon Meadows Homeowners Association, Inc. (Association), appeals from a decision of the Clermont County Court of Common Pleas awarding summary judgment to defendants-appellees, O'Bannon Properties, LLC (OBP) and Brookstone Homes, LLC. For the reasons discussed below, we affirm the trial court's decision.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2}  O'Bannon Meadows Subdivision (Subdivision) is a planned unit development, approved by the Goshen Township Zoning Commission and Board of Trustees.  On April 28, 2004, OBP recorded the "Declaration of Covenants, Conditions, Restrictions, and Reservation of Easements" (Declaration) for the Subdivision in the Clermont County Recorder's Office.  Attached to the Declaration were the original Subdivision "Design Guidelines," which set forth the standards for all new constructions, modifications, or improvements to existing structures.

{¶ 3}  The initial language of the Declaration provides that OBP and the homeowners in the Subdivision agree that the property "shall be held, sold and conveyed subject to the covenants, conditions, restrictions and reservations of easements" within the Declaration, which are created "for the purpose of protecting the value and desirability of and which shall run with the [Subdivision]."  The Declaration is "binding on all parties having any right, title or interest in the [Subdivision], its successors and assigns, and shall inure to the benefit of each owner thereof."

{¶ 4}  Article VI of the Declaration provides for the creation of the Association and states that the purposes of the Association are to "provide for the administrative governance, maintenance and upkeep of the [Subdivision] and to promote the health, safety, and welfare of the Owners and Occupants of the [Subdivision]."  In order to accomplish its purposes, the Declaration provides the Association with certain powers:

> **6.3  Powers of the Association.**  Subject to Special Declarant Rights hereinafter set forth, the Association may:
>
> **6.3.1**  adopt a Code of Regulations for the government of the Association, the conduct of its affairs and the management of the property;
>
> **6.3.2**  adopt rules and regulations for the use and occupation of the Common Elements and to enforce violations of the rules and

regulation[s] and the provisions and restrictions of the Declaration as against the Owners and Occupants;

\* \* \*

**6.3.16** exercise any other powers conferred by the Declaration, Code of Regulations or Articles of Inlimited [sic] liability company[.]

{¶ 5} The Code of Regulations mentioned in Subsection 6.3.1 of Article IV, was created by the Association and it established the Association's name as well as membership eligibility for those who owned a home within the Subdivision. The Code of Regulations also explicitly incorporated the terms of the Declaration by providing that, "[t]he terms used in this Code of Regulations shall have the same meaning as set forth in the Declaration of Covenants, Conditions, Restrictions and Easements \* \* \* unless the context shall prohibit."

{¶ 6} OBP initially controlled the Association upon its formation. However, pursuant to Article XIII, Sub-subsection 13.3.1.2, OBP's control of the Association terminated "seven (7) years after recording of this Declaration." Thus, on April 25, 2011, control of the Association passed from OBP to the homeowner-members of the Association.

{¶ 7} Thereafter, on March 20, 2012, the Association purportedly amended the Design Guidelines ("Amended Design Guidelines") originally created by OBP. The Association claimed authority to amend the Design Guidelines under Article IX, Sub-subsection 9.2.1.2 of the Declaration. Article IX states, in pertinent part:

**ARTICLE IX: RESTRICTIONS**

\* \* \*

**9.2 Architectural Restrictions.** The following architectural restrictions shall be applicable to the Lots [in the Subdivision].

**9.2.1 Plan Approval.** No structure shall be placed, erected or installed upon any Lot, no construction (which term shall include within its definition staking, clearing, excavation, grading, and other site work), no exterior alteration or modification of existing improvements, and no plantings or removal of plants, trees or

- 3 -

shrubs shall take place until the requirements of this section have been fully met. *Prior to any construction, the Owner or Builder shall first submit to [OBP] * * * a complete set of building plans for the proposed construction.* [OBP] shall approve, reject or modify such plans in a writing sent to the Owner or Builder in question not more than thirty (30) days after the plans are submitted to [OBP]. * * * If [OBP] fails to approve, reject, or modify the plans within the thirty (30) day period, [OBP's] approval shall be deemed to have been given, and no further permission shall be needed before the improvements described in such plans may be constructed or installed. However, in no event shall any improvements by [sic] constructed or installed which violate any terms of this Declaration.

**9.2.1.1 Declarant's Plan Approval Period.** *[OBP's] right of plan approval shall exist for as long [OBP] owns any Lot in the [Subdivision].* [OBP's] right of plan approval shall include any alterations to existing Lots or Dwelling Units and/or items requiring prior plan approval by this Declaration. In any items or matters that are discretionary, [OBP's] decision shall be conclusive upon all parties.

**9.2.1.2 Design Guidelines.** [OBP] shall prepare and, on behalf of itself and the Association, shall promulgate design and development guidelines governing construction within the [Subdivision], which shall include application and review procedures to be followed in submitting an application for approval hereunder ("Design Guidelines"). *The Design Guidelines shall be those of the Association, and [OBP] and/or the Association shall have sole and full authority to modify and to amend them from time to time without the consent of any Owner.* * * *

**9.2.1.3 Association's Right of Plan Approval.** After [OBP's] right of plan approval has expired, the Association shall be responsible for plan approval. [OBP] may assign its right of plan approval, or any portion thereof, to the Association.

(Emphasis added).

{¶ 8} Although the Association sent notice in March 2012 of the Amended Design Guidelines to OBP and Brookstone, a builder of homes in the Subdivision, Brookstone started construction of a new home in May 2012 without first submitting the building plans to the Association to ensure that the plans conformed to the Amended Design Guidelines. On May 16, 2012, the Association sent a "Cease and Desist Notice" to Brookstone informing it

that it should "cease and desist from any physical activity * * * in furtherance of new construction until it is determined that Brookstone's building plans conform to the [Amended] Design Guidelines." Brookstone disregarded the cease and desist notice and continued construction.

{¶ 9} As a result, on June 18, 2012, the Association filed suit, seeking declaratory judgment and injunctive relief. Specifically, the Association sought an injunction to halt construction in the Subdivision and declaratory judgment establishing its rights and liabilities under the Declaration. In its complaint, the Association claimed that it is "entitled to have the Court issue a Declaratory Judgment that the Association is the only entity possessed with the authority to modify or amend the O'Bannon Meadows Homeowners Association Design Guidelines."

{¶ 10} On August 1, 2012, the Association moved for summary judgment, arguing that "it has the right to amend and enforce the Design Guidelines as are [sic] adopted and amended from time to time, and to secure injunctions against violations of the provisions of the Design Guidelines." Relying on Article IX, Subsection 9.2.1 and Sub-Subsections 9.2.1.1, 9.2.1.2, and 9.2.1.3 of the Declaration, the Association argued that OBP's right to "plan approval" is different than the Association's right to ensure that a builder is constructing the home in accordance with the Design Guidelines. Specifically, the Association's position is that "[OBP] may retain the right to review the specific, complete set of building plans, while at the same time the Plaintiff Association (since control has passed) has the right to perform a general review of the plans to determine whether they meet the design guidelines for new construction within the subdivision, *and to approve or disapprove those plans.*" (Emphasis sic.)

{¶ 11} On August 3, 2012, OBP and Brookstone filed a competing motion for summary judgment. OBP and Brookstone agreed with the Association that interpretation of Article IX,

Subsection 9.2.1 and Sub-subsections 9.2.1.1, 9.2.1.2, and 9.2.1.3 of the Declaration were necessary for the determination of which party had the right to approve plans and promulgate design guidelines. However, OBP and Brookstone contended that OBP retains the sole and exclusive right to set guidelines for new construction until *all* of the lots in the Subdivision have been sold pursuant to Sub-subsection 9.2.1.1.

{¶ 12} On September 6, 2012, the trial court issued a decision granting OBP and Brookstone's motion for summary judgment and denying the Association's motion for summary judgment and its request for a permanent injunction. The trial court found that the Declaration did not "grant authority or power to [the Association] * * * enabling it to have the sole authority to grant final approval to any builder to construct a home in the subdivision. Further, there is no grant of authority or power to [the Association] * * * to allow it to amend the original Design Guidelines as recorded with the Declaration in 2004." The trial court concluded that under Article IX, Sub-subsection 9.2.1.2, OBP remains the "ultimate and final authority" for plan approval as long as it owns one lot in the Subdivision, which it undisputedly does own.

{¶ 13} The Association now appeals, raising a single assignment of error.

## II. ANALYSIS

{¶ 14} Assignment of Error:

{¶ 15} THE TRIAL COURT ERRED BY DENYING PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 16} The Association does not contest the trial court's determination that OBP has the ultimate and final authority for plan approval so long as it owns one lot in the Subdivision. Rather, the Association argues that the "trial court lost its way" by ignoring the plain language of the Declaration, which, according to the Association, contains two separate and distinct

standards for "plan approval" and the promulgation of "design guidelines." Specifically the Association contends that "plans are subject to an application and review process [by the Association] which determines, among other things, whether they are in accord with the Design Guidelines (which [the Association] had the sole and full authority to modify or amend); once approved, they are then subject to final approval by [OBP]."

{¶ 17} This court's review of a trial court's ruling on a motion for summary judgment is de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. No. CA2010-12-102, 2011-Ohio-3014, ¶ 14, citing *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997). Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.).

{¶ 18} The parties agree there are no genuine issues of material fact that would prevent this matter from being determined on summary judgment. Further, all parties agree that the resolution of their dispute is dependent upon the interpretation of the Declaration.

{¶ 19} A declaration is a contract, and as such, construction of the Declaration is a matter of law. *Providence Manor Homeowners Assn., Inc. v. Rogers*, 12th Dist. No. CA2011-10-189, 2012-Ohio-3532, ¶ 26; *Lisy v. Mayfair Estate's Homeowners Assn.*, 9th Dist. No. 25392, 2012-Ohio-68, ¶ 29. In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Rogers* at ¶ 27, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273 (1999). In ascertaining the intent of the parties,

the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997), citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "A writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. * * * Multiple documents should be construed together if they are part of the same transaction." *Graffin v. Schumacher Homes of Cincinnati, Inc.*, 12th Dist. No. CA2012-09-066, 2013-Ohio-992, ¶ 11, citing *Mantua Mfg. Co. v. Commerce Exch. Bank*, 75 Ohio St.3d 1, 5 (1996).

{¶ 20} "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Rogers* at ¶ 27, citing *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. No. CA2012-07-061, 2010-Ohio-5186, ¶ 12. A contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. *Cooper* at ¶ 12. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Foster Wheeler Enviresponse* at 361. Whether a contract's terms are clear or ambiguous is a question of law for the court. *Cooper* at ¶ 12.

## A. Plan Approval

{¶ 21} We begin our analysis by determining whether OBP has plan approval over the construction of, or the improvement to, lots in the Subdivision. Here, having reviewed the Declaration and its associated documents, including the Design Guidelines and the Code of Regulations, we agree with the trial court that the clear and unambiguous language of Article IX, Subsection 9.2.1 and Sub-subsection 9.2.1.1 of the Declaration grants OBP the right of plan approval until it no longer owns a lot in the Subdivision. As OBP undisputedly owns at

least one lot in the Subdivision, OBP retains the exclusive authority to approve plans for new constructions, modifications, or improvements to existing structures.[1] At the time OBP no longer owns a lot in the Subdivision, its right of plan approval expires, and the Association is vested with the exclusive right to plan approval.

## B. Design Guidelines

{¶ 22} The Association argues on appeal that, even if OBP has the right of "final" plan approval, the Association has a right to determine whether plans are in accord with the Design Guidelines, which it contends it has the sole authority to modify or amend as "control of the Association passed from [OBP] to its [homeowner] members on April 25, 2011." Thus, the issues raised by the Association are whether, under the terms of the Declaration—and specifically Article IX—the Association possessed the authority to amend the Design Guidelines in March 2012 and whether it currently has the ability to enforce the Amended Design Guidelines.

{¶ 23} Article XIII, Sub-subsection 13.3.1.2 of the Declaration clearly and unambiguously transferred "control of the Association" to the homeowner-members of the Association on April 25, 2011. However, this passage of control did not grant the Association the authority to amend or enforce the Design Guidelines. Rather, the Association was given the right to regulate and control itself. For example, Subsection 13.3.1 and Sub-subsection 13.3.1.2 give the Association the authority to appoint and remove Officers and Board members. Nowhere in Article XIII, or in any other portion of the Declaration, is the Association given the express right to amend or enforce the Design Guidelines merely because "control of the Association" passed to it.

---

1. Article IX, Sub-subsection 9.2.1.3 of the Declaration permits OBP to assign its right of plan approval, or any portion thereof, to the Association prior to selling all lots in the Subdivision. There is nothing in the record to demonstrate, nor has the Association argued, that OBP assigned its right of plan approval to the Association. As such, OBP retains the exclusive authority for plan approval.

**{¶ 24}** Further, nowhere in Article VI, Section 6.3 of the Declaration, which sets forth the "Powers of the Association," is the Association granted the authority to amend or enforce the Design Guidelines. Reading the Code of Regulations referenced in Article VI, Subsection 6.3.1 in conjunction with the Declaration, it is apparent that the Association was without authority or power to amend or enforce the Design Guidelines promulgated in March 2012. While Article V, Section 3 of the Code of Regulations specifically authorizes the Association to appoint a "Design Review Committee" to "develop and promulgate architectural standards and guidelines," the Committee and Association's authority is specifically limited to "*those matters that are within the Association's authority to regulate.*" (Emphasis added.) Where the Declaration does not provide the Association with a specific power or authority to act or regulate, the Association may not act or seek to regulate on its own accord.

**{¶ 25}** Although the Association argues that Article IX, Sub-subsection 9.2.1.2 gave it the power to act or regulate by amending the Design Guidelines in March 2012, we find that the intent of the parties was otherwise. In reaching this determination, we are mindful that, where possible, a contract should be construed to give effect to all of its provisions. *Pierce Point Cinema 10, L.L.C. v. Perin-Tyler Family Found., L.L.C.*, 12th Dist. No. CA2012-02-014, 2012-Ohio-5008, ¶ 11. However, when it is not possible to harmonize all provisions of the contract, the specific clause prevails over the general clause. *Id.* at ¶ 17; *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 175 (8th Dist.1986).

**{¶ 26}** Sub-subsection 9.2.1.2 specifically provides OBP with the authority to "promulgate and design development guidelines governing construction within the [Subdivision]." This specific provision is followed with the general statement that the Design Guidelines can be modified or amended "from time to time" by "[OBP] *and/or* the Association." (Emphasis added.) "When [the] expression 'and/or' is used, that word may be taken as will best effect the purpose of the parties as gathered from the contract taken as a

whole, or, in other words, as will best accord with the equity of the situation." *Black's Law Dictionary* 79 (5th Ed.1979). *See also Newlon v. Newlon*, 310 Ky. 737, 740, 220 S.W.2d 961, 963 (1949) (finding that when the expression "and/or" is used in contracts its interpretation depends upon the circumstances and it must be construed to express the intention of the parties); *Jones v. Servel, Inc.*, 135 Ind.App. 171, 178, 186 N.E.2d 689, 693 (1962) (finding that interpretation of the expression "and/or" requires the court to look at the contract as a whole to determine the parties' intent).

{¶ 27} Looking at the Declaration as a whole, paying special attention to Article IX, we find that use of the expression "and/or" in Sub-subsection 9.2.1.2 was meant to express the intention that the Association be given the right to amend the Design Guidelines and enforce such amended guidelines *only after OBP's right of plan approval has expired or been expressly assigned*. Any other construction of Sub-subsection 9.2.1.2 would require this court to annul or render meaningless Sub-subsections 9.2.1.1 and 9.2.1.3, which this court declines to do in light of the fact that the Design Guidelines contemplated in Sub-subsection 9.2.1.2 are not part of the restrictive covenants, conditions, or restrictions of the Declaration.[2]

{¶ 28} Accordingly, we find that the Association did not have the authority to amend the Design Guidelines in March 2012. We further find that until OBP's right to plan approval expires or is specifically assigned as contemplated by Article IX, Sub-subsection 9.2.1.1, OBP, not the Association, has the sole authority for plan approval and for the promulgation of new Design Guidelines or the amendment of the original Design Guidelines.

---

2. The Design Guidelines specifically provide as follows:

> The following standards have been developed and promulgated by the [OBP] in accordance with Article IX, [Sub-subsection] 9.2.1.2 of the Declaration and are applicable to all new construction and all modifications or improvements. *These Design Guidelines are not part of the Declaration and can be amended by the [OBP] or the Association without a vote of the Owners.*

(Emphasis added).

### III. CONCLUSION

**{¶ 29}** In light of the foregoing, we find that the trial court did not err in awarding summary judgment to OBP and Brookstone. We further find that the trial court did not err in denying the Association's motion for summary judgment or its request for a permanent injunction to halt construction in the Subdivision.

**{¶ 30}** Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.